UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ROBINSON,

    Petitioner,

v.

    Case No. 2:16-cv-13949

    HONORABLE STEPHEN J. MURPHY, III

SHERRY BURT,

    Respondent.

_____/

**OPINION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS
CORPUS [1], DENYING CERTIFICATE OF APPEALABILITY,
AND DENYING PERMISSION TO FILE APPEAL IN FORMA PAUPERIS**

Petitioner John Robinson, a Michigan prisoner, seeks habeas relief under 28 U.S.C. § 2254. After he pleaded no contest in the Oakland Circuit Court, Robinson was convicted of five counts of armed robbery, Mich. Comp. Laws § 750.529, five counts of commission of a felony with a firearm, Mich. Comp. Laws § 750.227B, and carrying a concealed weapon, Mich. Comp. Laws § 750.227. He was sentenced to concurrent terms of 6 to 50 years for each of the armed-robbery convictions, consecutive 2-year terms for the firearm convictions, and 9 months to 5 years for the concealed-weapon conviction. The petition raises a single claim: Robinson's plea was involuntary because his trial counsel and the trial court misled him into believing that he could appeal the denial of pretrial motions following his plea. The Court finds that Robinson's claim is without merit. Therefore, the petition will be denied. The Court will also deny Robinson a certificate of appealability and deny him leave to appeal in forma pauperis.

## BACKGROUND

Robinson's convictions arose from a July 29, 2014 robbery at a Southfield, Michigan hotel. Three of the victims identified Robinson as one of the assailants. John Culliver testified at the preliminary examination that on the night of the robbery he was at the Hawthorn Suites Hotel in Southfield with several other people. Sometime around midnight, two men entered the hotel room armed with handguns. Culliver identified Robinson as one of the two men. Robinson announced that it was a stick-up, and he directed the occupants to give them everything they had. Culliver and the other people in the hotel room gave their possessions to Robinson and his accomplice. Robinson then struck Culliver on the back of the head with the butt of his handgun. The two men left, and someone called 9-1-1. Kejuantaw Matthews testified that he was also in the hotel room. He identified Robinson and co-defendant Kalvin Hall as the two robbers. Stevie Harrell similarly testified to the facts surrounding the robbery, and he also identified Robinson as one of the assailants.

Southfield Police Sergeant Thomas Langewicz testified that on the night of the robbery, he was conducting a stake-out to investigate recent armed robberies that occurred at local hotels. He identified two men in the parking lot of the Hawthorn Suites Hotel as possible suspects based on prior descriptions of the robbers. When the two men exited the parking lot in a vehicle at a high rate of speed, Langewicz pulled his patrol car next to the suspect vehicle. When the vehicle started to accelerate through a red light, Langewicz rammed it to prevent a high-speed pursuit. Hall was in the driver's seat, and Robinson was in the front passenger seat. Handguns were subsequently found under their seats.

Based on this evidence, Robinson was bound over to the state circuit court for trial on eleven felony counts. Robinson filed a pro se motion to suppress evidence, claiming that

he was the driver, and that the traffic stop violated his Fourth Amendment rights. Defense counsel indicated that he could not support the motion because the police report indicated Robinson was a passenger, and immediately prior to the stop there had been a police dispatch regarding the armed robbery at the hotel. The trial court denied the motion, finding that Langewicz's observations at the hotel parking lot, in combination with the police dispatch information, constituted reasonable suspicion to justify stopping the car.

Robinson subsequently filed a motion to dismiss the case because video evidence from one of the patrol cars had not been preserved. The trial court denied the motion to dismiss, but indicated that the failure to record video would be a subject for cross examination at trial, and that it would consider an adverse-inference jury instruction.

Robinson pleaded no contest to the charged offenses, and in exchange the prosecutor agreed to a 6-year minimum sentence for the armed robbery convictions plus a consecutive 2 years for the firearm charges. The sentencing guidelines called for a sentence range of 9 to 15 years. ECF 8-5, PgID 164.

Robinson was placed under oath. *Id.* at 166. He testified that he was 19 years old, and that he could read and write. *Id.* He indicated he was satisfied with the advice his attorney gave him. *Id.* Robinson acknowledged that he was pleading no contest to five counts of armed robbery, five counts of possession of a firearm during commission of a felony, and carrying a concealed weapon. *Id.* at 167. He indicated his understanding that he could receive up to life in prison. *Id.* Robinson understood that the plea agreement called for a 6-year minimum sentence for the armed robbery convictions plus 2 years for the firearm offenses. *Id.* He indicated his desire to accept the agreement. *Id.*

Robinson was then informed of, and agreed to waive, each of his trial rights. *Id.* at

167–68. Robinson understood that he was giving up any claim that his plea was the result of any promises or threats that were not disclosed at the plea hearing, and that it was his own choice to plead guilty. *Id.* at 168. He understood that any appeal would be by application for leave to appeal and not by right. *Id.* at 168–69. Robinson denied that anyone had threatened him to get him to plead, and that it was his own choice to do so. *Id.* at 169. The Court found that Robinson's no-contest plea was entered understandingly, voluntarily, and accurately. *Id.* at 170.

At the sentencing hearing, defense counsel informed the court that Robinson wished to make his plea conditional, to preserve his pretrial motions for appeal. ECF 8-6, at 174. The prosecutor indicated that the plea had not been conditional. *Id.* The trial court stated that the plea was not conditional, and there was no basis for withdrawing the plea. *Id.* Robinson then personally addressed the court: "I took this no contest plea under the persuasion that I could appeal the things that I put on record . . . but taking a no contest plea . . waives no jurisdiction or defects. It waives jurisdictional defects and things that I put on a motion." *Id.* at 175. The trial court informed Robinson that he could appeal. *Id.* The court then sentenced Robinson based on the terms of the plea agreement as indicated above.

Robinson filed a delayed application for leave to appeal with the Michigan Court of Appeals, raising the following claim:

> I. Due process requires plea withdrawal where the trial court and defense counsel misled defendant to believe he could further appeal the rulings of the suppression and due process motions following an unconditional guilty plea.

Robinson also filed a motion for peremptory reversal. The Michigan Court of Appeals denied Robinson's delayed application "for lack of merit in the grounds presented," and

denied his motion for peremptory reversal. ECF 8-7, *People v. Robinson*, No. 331239 (Mich. Ct. App. April 11, 2016). Robinson then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claim. The Michigan Supreme Court denied the application because it was not persuaded that the question presented should be reviewed by the Court. *People v. Robinson*, 500 Mich. 868 (2016) (Table).

## LEGAL STANDARD

Federal courts have limited authority to review constitutional claims raised by a state habeas petitioner if the claims were adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d)(1). The Court must deny habeas relief unless the state-court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law. *Id.* "A state court's decision is 'contrary to' . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court cases] or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quotations omitted). "[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quotations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotations omitted). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the

5

state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103 (citation and quotations omitted).

## DISCUSSION

Robinson claims that his plea was unknowing or involuntary—in violation of due process—for one reason: he was not informed that his no-contest plea foreclosed by-right appeal of the trial court's denial of his pretrial Fourth-Amendment and dash-cam motions. Robinson has previously raised this claim to the Michigan Court of Appeals; the court rejected his application for leave to appeal "for lack of merit in the grounds presented." ECF 8-7, *People v. Robinson*, No. 331239 (Mich. Ct. App. April 11, 2016). This decision amounted to a decision on the merits. *See Werth v. Bell*, 692 F. 3d 486, 494 (6th Cir. 2012) (holding that "denial of an application 'for lack of merit in the grounds presented' is a decision on the merits of the issues raised . . . and thus qualif[ies] for AEDPA deference.") (citations and quotations omitted). As a result, the Court must apply § 2254's deferential standard of review.

Under clearly established Supreme Court law, a guilty plea must be knowing, intelligent, voluntary, and done "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quotations omitted). The identical standard applies to a plea of no contest or nolo contendere. *Fautenberry v. Mitchell*, 515 F.3d 614, 636–37 (6th Cir. 2008). For a guilty or no-contest

plea to be voluntary, the defendant must be

> fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, [and not] induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970) (quotations omitted). To be informed of the direct consequences of his plea, the defendant must be made aware of "the maximum sentence that could be imposed." *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).

The voluntariness of a guilty or no-contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749. A plea-proceeding transcript which suggests that a guilty or no-contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no-contest plea was voluntary and intelligent, "a presumption of correctness" attaches to the state-court findings of fact and to the judgment itself. *Id.* at 326–27.

Robinson's claim fails because it is not supported by clearly established Supreme Court law. Under established Supreme Court law, a criminal defendant must only be advised of the "direct consequences" of a plea, *Brady*, 397 U.S. at 748, and need not be advised of the indirect or collateral consequences of a plea, *King*, 17 F.3d at 153. Direct consequences generally include things within the trial court's immediate control: the waiver of trial rights and the sentence that will be imposed. *See id.* at 154. Indirect consequences, on the other hand, generally include things outside the trial court's direct control: how or whether claims of trial-court error will be reviewed by an appellate court. *See United States*

*v. Adigun*, 703 F.3d 1014, 1020 (7th Cir. 2012) ("We have previously held that the trial court is not obligated to inform defendants of the consequences of an unconditional plea on a potential appeal."); *Upton v. Hoyt*, 43 F. App'x. 34, 35, 2002 WL 1752247, at *1 (9th Cir. 2002) ("Here, because the decision on [petitioner's] constitutional challenge to her sentence was in the hands of another governmental agency, the state appellate court, the 'consequences' complained of by [petitioner] are collateral, not direct. Consequently, the trial court was not required to advise [petitioner] that the Oregon Court of Appeals might decline to review the merits of her constitutional challenge to her sentence."); *Blue v. Warden*, No. 13-CV-638-RWT, 2013 WL 4659707, at *5 (D. Md. Aug. 29, 2013) ("There is no requirement under federal constitutional law that before a trial court may accept a criminal defendant's guilty plea, a defendant must be advised that his appeal rights may be limited by his pleading guilty."). Robinson fails to cite to any clearly established Supreme Court precedent to the contrary.

Moreover, an examination of all the relevant circumstances surrounding the plea shows that Robinson's plea was entered knowingly and voluntarily. Robinson was advised of all the trial rights he was waiving by entering his plea, and he was informed of the maximum possible sentence, as well as the agreed-to minimum sentence. He denied that any promises were made to him that were not disclosed on the record. ECF 8-5, PgID 168. This sworn testimony belies Robinson's claim that he was promised he could appeal his pretrial motions. Based on the thorough plea colloquy conducted by the trial court, the Court finds that the Michigan Court of Appeals rejection of Robinson's claim was not contrary to clearly established Supreme Court law, nor did it involve an unreasonable application of that law. Robinson's claim does not warrant habeas relief.

**CERTIFICATE OF APPEALABILITY**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 Governing Section 2254 Proceedings requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (alteration and quotations omitted). Here, jurists of reason would not debate the Court's resolution of Robinson's claim because it is meritless. Therefore, the Court denies a certificate of appealability. The Court will also deny Robinson leave to appeal in forma pauperis, "because the appeal would be frivolous." *Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus

[1] is **DENIED WITH PREJUDICE**.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

IT IS FURTHER ORDERED that leave to appeal in forma pauperis is **DENIED**.

**SO ORDERED**.

<pre>
                                        s/Stephen J. Murphy, III
                                        STEPHEN J. MURPHY, III
                                        United States District Judge
</pre>

Dated: June 30, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 30, 2017, by electronic and/or ordinary mail.

<pre>
                                        s/David P. Parker
                                        Case Manager
</pre>